UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ERMA JEAN BROOKS, *et al.*, ] | |
| ] | |
| Plaintiffs, ] | |
| ] | |
| vs. ] | CV-06-CO-01805-W |
| ] | |
| SMITH & NEPHEW, INC., *et al.*, ] | |
| ] | |
| Defendants. ] | |

MEMORANDUM OF OPINION

I.  Introduction.

The Court has for consideration defendants Spar Medical, Inc. (hereinafter referred to as "Spar") and Tim Prewitt's[1] (hereinafter referred to as "Prewitt") motions to dismiss (Docs. 6 & 14), as well as Plaintiffs' Motion to Remand (Doc. 8).  Defendants Spar and Prewitt contend that they have been fraudulently joined in this action for the sole purpose of defeating this Court's removal jurisdiction and thus should be dismissed.

---

[1]Although Plaintiff named Tim "Pruett" as a defendant in this matter, Smith & Nephew, for purposes of their Notice of Removal only, recognized that Plaintiffs probably intended to name Tim "Prewitt" as the sales representative in question. Therefore, this Court will refer to Tim Prewitt as the sales representative Plaintiffs allege interacted with their treating surgeon prior to the subject surgeries.

Plaintiffs responded to the motions by filing their motion to remand this case to the Circuit Court of Bibb County, Alabama, on the basis that Prewitt and Spar are properly joined defendants. The motions have been fully briefed by the parties and the issues raised therein are now ripe for decision.

II.     Facts.

Plaintiffs Erma Jean Brooks and Billy Ethridge underwent total knee arthroplasty surgeries on their left knees on September 5, 2002, and April 15, 2003, respectively. The prosthesis used in the surgery was a total knee system consisting of the following: the Profix Macrotextual Oxinium Femoral Component; the Profix Metaphyseal Tibial Stem; the Profix Conforming Articular Insert; and the Profix Tibial Base, Pourous, Without Holes. According to Plaintiffs, after the high failure rate of the product, Defendants "voluntarily withdrew" from the market the prosthesis of the type implanted in Plaintiffs. Ms. Brooks and Mr. Ethridge claim to have experienced numerous problems as a result of the prosthesis, including permanent injury, fatigue and illness, staph infection, extreme pain preventing participation in day-to-day activities and duties, medical

treatment including the removal of the total left knee implant, future medical treatment, substantial medical and pharmacy bills, and extreme mental anguish.  Mr. Brooks claims to have lost the services and consortium of his wife, as well as suffering from emotional distress and mental anguish.

Plaintiffs filed their complaint on July 27, 2006, alleging claims against Defendants for negligence, wantonness, violation of the Alabama Extended Manufacturers Liability Doctrine, breach of warranty, failure to warn, misrepresentation, and concealment and suppression.  (Doc. 1.)  On September 11, 2006, defendant Smith & Nephew, Inc. (hereinafter referred to as "Smith & Nephew") removed this case to the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. 1.)  Smith & Nephew alleges that this Court has jurisdiction over this action under 28 U.S.C. § 1332 (diversity) because it is a civil action in which the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and complete diversity of citizenship exists between the properly joined parties.  *Id.*

III.     Standard for Remand.

"Federal Courts are courts of limited jurisdiction." *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Federal courts only possess the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *Id*. For removal to be proper, the Court must have subject-matter jurisdiction in the case. "Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar v. Williams*, 482 U.S. 386, 392 (1987). Additionally, removal statutes must be strictly construed against removal, and any doubts should be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). The removing defendants bear the burden of establishing subject-matter jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (stating that the defendant bears the burden of proving subject-matter jurisdiction in removed actions).

IV.     Discussion.

Defendant Smith & Nephew challenges the joinder of defendants Spar, Prewitt, and Sonny Dortch. (Doc. 1, p. 4.) Plaintiffs, Spar, Prewitt, and Dortch are all allegedly residents of Alabama, while Smith & Nephew is a Delaware corporation with its principal place of business in Memphis, Tennessee. Before this Court can exercise diversity jurisdiction, complete diversity of citizenship must exist. "Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Without the three defendants in question, there is complete diversity of citizenship.

A.      Defendants' Motions to Dismiss Due to Fraudulent Joinder.

Smith & Nephew first raised the issue of fraudulent joinder in its Notice of Removal, and defendants Spar and Prewitt filed motions to dismiss on the basis of their being fraudulently joined in this action.[2]

---

[2] No motion was filed on behalf of defendant Sonny Dortch as Smith & Nephew contends that it is "unaware of ever having an agent, servant, and/or employee by the name of 'Sonny Dortch.'" (Doc. 1, p. 13.) Smith & Nephew further states that even if someone named Sonny Dortch had been employed by it as a sales representative for the subject products, such a person would be fraudulently joined for the same reasons as Prewitt would be so fraudulently joined. *Id*.

This Court is free to disregard the citizenship of any defendant it determines has been fraudulently joined. *Triggs*, 154 F.3d at 1287. In *Triggs*, the Eleventh Circuit Court of Appeals described three situations when a defendant can be considered to have been fraudulently joined:

> Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity. Joinder has been deemed fraudulent in two situations. The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983), superceded by statute on other grounds as stated in *Georgetown Manor, Inc. v. Ethan Allen, Inc.,* 991 F.2d 1533 (11th Cir. 1993). The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. *Coker,* 709 F.2d at 1440. In *Tapscott*, 77 F.3d at 1355 (11th Cir. 1996), a third situation of fraudulent joinder was identified—i.e., where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.

*Id.*

"The burden of the removing party is a 'heavy one.'" *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (quoting *B, Inc. v. Miller*

*Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981)).  In determining whether a case should be remanded, the district court must evaluate all factual allegations in the light most favorable to the plaintiff, and it must resolve all uncertainties regarding the facts of the case and state substantive law in favor of the plaintiff.  *Id*.  The "determination of whether a resident has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, *supplemented by any affidavits and deposition transcripts submitted by the parties*."  *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005)  (emphasis in original) (quoting *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998)).  "The proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)."  *Id*. (internal quotations omitted).  Even though factual considerations are resolved in favor of the plaintiff, "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor."  *Id*.  If the defendant offers sworn statements supporting the allegation of fraudulent joinder, the plaintiff must present evidence to dispute the assertions in the affidavits or other evidence.  *Id*.  When the evidence is

undisputed, "the court cannot then resolve the facts in the Plaintiff's favor based solely on the unsupported allegations in the Plaintiff's complaint." *Id.* The Court simply cannot, "*in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" *Id.* (quoting *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393-94 (5th Cir. 2000) (emphasis in original)).

In addition, a plaintiff must show that the potential for legal liability is "reasonable" and "not merely theoretical." *Legg*, 428 F.3d at 1324 n. 5 (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 1992)). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (emphasis in original).

    1.    Spar Medical, Inc.

Spar contends that each of Plaintiffs' claims for violations of the AEMLD, negligence, wantonness, breach of warranty, failure to warn, misrepresentation, concealment/suppression, and loss of consortium fail

because Spar was not part of the distribution chain of the products made the subject of this action. (Doc. 6, p. 2.) Spar relies on the affidavit of James Sporacio to support its motion to dismiss. (Doc. 6, Exhibit 1, p. 1.) According to Mr. Sporacio, Spar had a contract with Smith & Nephew prior to January 2002 pursuant to which Spar acted as a distributor of certain Smith & Nephew orthopedic implants. *Id*. Mr. Sporacio states that the contractual relationship between Spar and Smith & Nephew ended on December 31, 2001, well before the subject products would have been delivered for use in Plaintiffs' surgeries on September 5, 2002, and April 15, 2003. *Id*. Sporacio claims that "Spar Medical has never handled, sold, or distributed any of the products manufactured or sold by Smith & Nephew that are the subject of this action." *Id*. at 2. In fact, Sporacio states that Smith & Nephew did not even introduce the line of macrotextured products that are the subject of this case until after the contractual relationship had ended. (Doc. 13, Exhibit B, p. 2.) Finally, according to Sporacio's affidavit, "Spar Medical had no involvement in the design, research, testing, formulation, development, labeling, Food & Drug Administration clearance, manufacturing, marketing, sale, or supply of the subject products." *Id*.

In its notice of removal, Smith & Nephew also relies on the affidavit of Tim Prewitt, an independent contractor who works as a sales representative for Smith & Nephew, to establish the procedure used for the sale and delivery of Smith & Nephew products of the type alleged to be used in the surgeries of Ms. Brooks and Mr. Ethridge to physicians and hospitals in Alabama.  (Doc. 1, Exhibit B, p. 2.)  He states that the treating physician places an order with the sales representative for the products that, in his judgment, will be needed for each procedure. *Id*.  The sales representative then forwards that order to Smith & Nephew, which retains the right to accept or reject the order.  *Id*.  Smith & Nephew directly bills the hospital for the subject products, and the hospital pays Smith & Nephew directly.  *Id*.  Prewitt states that the products are shipped to the sales representative in a sealed shipping case, and inside the case each component of the implant is individually sealed.   *Id*. at 3.   Each component remains individually sealed until it is opened in the operating room at the request of the treating physician.  *Id*.  A nurse then unwraps and hands the component to the physician.  *Id*.  Any additional assembly of the component is performed by the treating physician in the operating room.  *Id*.  Mr. Prewitt

claims that he was not the sales representative for the products used in Plaintiffs' surgeries, and he offers that he was not assigned to Plaintiffs' treating physicians at the time their procedures were performed. *Id*.

Instead of responding to Spar's motion to dismiss or the arguments in favor of fraudulent joinder set out in Smith & Nephew's notice of removal, Plaintiffs requested that the Court defer consideration of the motions to dismiss until after it rules on the motion to remand. There is no requirement that this Court rule on a motion to remand prior to ruling on pending motions to dismiss where a removing party has raised the issue of fraudulent joinder. Furthermore, Plaintiffs asserted that because Spar relies on the affidavit of James Sporacio to support its argument, the Court must convert the motion to a motion for summary judgment and allow Plaintiffs to conduct pertinent discovery under Rule 56(f) of the Federal Rules of Civil Procedure. Plaintiffs have simply mischaracterized the standard applicable to a removing party's assertion of fraudulent joinder. As stated above, the proceeding used by the court to resolve a claim of fraudulent joinder "is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)." *Legg*, 428 F.3d at 1322. However, a plaintiff must present

evidence to rebut a defendant's claim of fraudulent joinder in order to create a question of fact. *Id*. In this case, Defendants have offered sworn statements supporting their allegations, but Plaintiffs have failed to present any rebuttal evidence.

In Plaintiffs' motion to remand, they assert that Dr. Edward Hilliard, the orthopedic surgeon who performed their surgeries, provided Plaintiffs' counsel with the names of Tim Prewitt and Sonny Dortch as the Smith & Nephew representatives who called on his practice. (Doc. 8, p. 2.) Plaintiffs do not, however, provide any admissible evidence that these individuals actually were the sales representatives with whom Dr. Hilliard corresponded regarding the products that are the subject of this case. Plaintiffs also assert that "[i]t is expected that individuals representing Smith & Nephew and/or Spar Medical misrepresented to orthopedic surgeons that the subject 'macrotextured'-coated product could be implanted 'without cement' despite the product labeling that stated 'for cemented use only.'" *Id*. at 3. Plaintiffs also aver that the factual statements proffered by Defendants in support of the contention that Spar was fraudulently joined:

> do not establish that, prior to the termination of a formal business relationship between Smith & Nephew and Spar Medical, representatives engaged by Spar Medical did not discuss with Dr. Hilliard using the subject 'macrotextured'-coated implants without cement and did not condone his implanting the subject Smith & Nephew product without cement.

(Doc. 8, p. 19.)  The record is simply void of any affidavit by Dr. Hilliard stating that a Spar representative made the kind of statements Plaintiffs hypothesize could have been made prior to the termination of the relationship between Spar and Smith & Nephew.  Plaintiffs' counsel states that he expects that discovery will produce evidence that representatives of Smith & Nephew and Spar were present during the implant surgeries and observed that surgeons were not using cement.  *Id.*  Plaintiffs' use of the phrase "discovery may also show" is simply not sufficient to rebut the evidence provided by Spar and Smith & Nephew in support of their allegations of fraudulent joinder.

For these reasons, the Court finds that the evidence supports Spar's contention that it was fraudulently joined in this matter, and its Motion to Dismiss (Doc. 6) is due to be granted.

      2.    Tim Prewitt.

Defendant Tim Prewitt has also moved this Court to dismiss Plaintiffs' claims against him on the grounds that he was fraudulently joined. (Doc. 14.) Prewitt joined in the arguments presented by Smith & Nephew in its notice of removal and response to Plaintiffs' motion to remand. *Id*. Prewitt states in his affidavit that at all times relevant to this action, he was an independent contractor who worked as a sales representative for Smith & Nephew. (Doc. 1, Prewitt Affid.) However, Prewitt claims that he was not the sales representative for the products used in Plaintiffs' surgeries. *Id*. In fact, he asserts that he was not the sales representative assigned to Plaintiffs' treating physician, Dr. Hilliard, at the time of Plaintiffs' implantation surgeries. *Id*. Prewitt states that he has "never represented to any doctor on whom I have called that the products made the subject of this action could or should be used without cement." *Id*. at 2.

Plaintiffs acknowledge that the range of causes of action that may be asserted against a sales representative under Alabama substantive law do not include claims based upon violations of the AEMLD or breach of warranty. (Doc. 8, p. 19.) However, Plaintiffs assert that agents and

employees may be held liable for their individual tortious conduct, even though it was committed while acting as an agent for a principal or a servant for a master. *Id.* (citing *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So. 2d 774, 775 (Ala. 1986)). For example, Plaintiffs note that an agent or employee who personally participates in fraudulent conduct may be held liable irrespective of whether he or she was acting in a corporate capacity. *Id.* Plaintiffs then remark that in its notice of removal, Smith & Nephew failed to identify the sales representative or representatives who contacted or communicated with Dr. Hilliard regarding the implants. (Doc. 8, p. 20.) Plaintiffs point out that Smith & Nephew never denied that Dr. Hilliard was contacted by some representative of Smith & Nephew and that Smith & Nephew never proffered clear and convincing evidence that such representatives "instructed Dr. Hilliard against use without cement." *Id.* However, at the removal stage of a case, a defendant is under no obligation to provide a plaintiff with a list of potential defendants. The determination of whether a case is removable is made by looking at the pleadings at the time of removal and not at the pleadings as they may be amended by a

plaintiff after he is allowed to conduct limited discovery.  *See Crowe*, 113 F.3d at 1538.

The only evidence presented by Plaintiffs to rebut Defendants' affidavits in support of their claims of fraudulent joinder is the affidavit of Michael C. Bradley, counsel for the plaintiffs.  (Doc. 15.)  The affidavit states that Plaintiffs' counsel was informed by Dr. Hilliard, Plaintiffs' physician, that Smith & Nephew agents or employees Tim Prewitt and Sonny Dortch advised him that the macrotextured knee implants could be surgically installed without cement.[3]  *Id*.  Defendant Smith & Nephew has moved to strike portions of the affidavit on the grounds that Bradley's statements reciting what he was told by Dr. Hilliard are inadmissible hearsay under Fed. R. Evid. 801 and 802.  (Doc. 16.)  When responding to a motion to dismiss or motion to remand, the Court will treat the evidence presented just as it would a response to summary judgment.  Otherwise admissible evidence may be submitted in an inadmissible form, though at trial the

---

[3] Bradley's affidavit states that he was told by Dr. Hilliard "that Smith & Nephew agents or employees Tim Prewitt and Sonny Dortch advised him that the Smith & Nephew macrotextured knees could be surgically implanted, without cement." (Doc. 15, Exhibit 1.)

evidence must be submitted in admissible form.  *See, e.g., McMillan v. Johnson*, 88 F.3d 1573,  1584 (11th Cir. 1996).  A statement is hearsay when it is made by someone other than the declarant, offered to prove the truth of the matter asserted.  *See* Fed. R. Evid. 801(c).  Although inadmissible at trial as a form of a double hearsay, the substance of Bradley's affidavit appears to this Court to be admissible as evidence in opposition to Smith & Nephew's arguments.  Therefore, Smith & Nephew's motion to strike is due to be denied.  However, Plaintiffs have not asserted that they relied on the advice provided by Dortch and Prewitt to Dr. Hilliard.  Even if Dortch and Prewitt could be held liable for participating in fraudulent conduct, it is unclear whether their alleged fraud  was perpetrated on Dr. Hilliard or the plaintiffs in this case.  Plaintiffs have not alleged that they relied to their detriment on Prewitt and Dortch's alleged claims regarding the implants.  Therefore, Plaintiffs have not demonstrated that the potential for legal liability is "reasonable" and "not merely theoretical."  *See Legg*, 428 F.3d at 1324 n. 5.

For the foregoing reasons, the Court is of the opinion that Plaintiffs have not provided sufficient evidence to rebut Prewitt's assertion of fraudulent joinder, and his Motion to Dismiss (Doc. 14) is due to be granted.

3.  Sonny Dortch.

Smith & Nephew asserts in its notice of removal that it "is unaware of ever having an agent, servant, and/or employee by the name of 'Sonny Dortch.'" (Doc. 1, p. 13.) Plaintiff has not provided evidence to counter the evidence that "Sonny Dortch" is a fraudulently joined defendant. In fact, Plaintiffs have not provided evidence that Sonny Dortch actually exists at all. Therefore, the residency of Mr. Dortch cannot be considered for the purposes of defeating Smith & Nephew's notice of removal at this time.

Defendants also argue that certain claims raised by Plaintiffs are barred by the applicable statute of limitations. However, because the record supports Defendants' allegations that the three defendants in question were fraudulently joined, "there was nothing 'improvident' or unreasonable in [Smith & Nephew's] effort to remove this case to federal court," and it is unnecessary for the Court to address Defendants' statute of limitations arguments at this time *Id*.

B.   Plaintiffs' Motion to Remand.

Because the Court finds that Defendants Spar and Prewitt were fraudulently joined, their citizenship need not be considered and complete diversity exists. *Triggs*, 154 F.3d at 1287. Therefore, Plaintiffs' Motion to Remand (Doc. 8) is due to be denied.

V.   Conclusion.

For the reasons stated above, Spar and Prewitt's Motions to Dismiss are due to be GRANTED. (Docs. 6 & 14.) Plaintiffs' Motion to Remand is due to be DENIED. (Doc. 8.) Smith & Nephew's Motion to Strike Portions of the Affidavit of Michael C. Bradley (Doc. 16) is due to be DENIED. Smith & Nephew's Motion for Leave to File Reply in Further Opposition to Plaintiffs' Motion to Remand (Doc. 17) is due to be GRANTED. A separate order in conformity with this opinion will be entered contemporaneously herewith.

Done this <u>8th</u> day of <u>June 2007</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153